[L. A. No. 18666. In Bank. Sept. 20, 1943.]

A. CAMINETTI, JR., as Insurance Commissioner, etc., Petitioner and Respondent, v. GUARANTY UNION LIFE INSURANCE COMPANY (a Corporation), Respondent; AUSTIN SHERMAN, Intervener and Appellant.

[L. A. No. 18667. In Bank. Sept. 20, 1943.]

A. CAMINETTI, JR., as Insurance Commissioner, etc., Petitioner and Respondent, v. NATIONAL GUARANTY LIFE COMPANY (a Corporation), Respondent; AUSTIN SHERMAN, Intervener and Appellant.

[L. A. No. 18668. In Bank. Sept. 20, 1943.]

A. CAMINETTI, JR., as Insurance Commissioner, etc., Petitioner and Respondent, v. BENJAMIN FRANKLIN LIFE ASSURANCE COMPANY (a Corporation), Respondent; CHAS. R. THOMPSON, Intervener and Appellant.

[L. A. No. 18669. In Bank. Sept. 20, 1943.]

A. CAMINETTI, JR., as Insurance Commissioner, etc., Petitioner and Respondent, v. PHYSICIANS LIFE INSURANCE COMPANY (a Corporation), Respondent; CHAS. R. THOMPSON, Intervener and Appellant.

Chas. R. Thompson in pro. per., and Sherman & Sherman for Interveners and Appellants.

Peery Price for Petitioner and Respondent.

SHENK, J.—Interveners seek a writ of supersedeas to stay, pending appeal, the force and effect of an order approv-

ing a rehabilitation and reinsurance agreement affecting the twelve mutual life insurance companies involved in these cases. The matter is submitted on the petition and the Insurance Commissioner's demurrer and answer.

In 1940, commencing in August, the Insurance Commissioner took possession of the assets of the corporations. His action was pursuant to section 1011 of the Insurance Code and was taken on the ground that the companies were in such condition that further transaction of business would be hazardous to policyholders, creditors, and the public. The seizures by the commissioner were challenged by appropriate proceedings and were upheld by the superior court. Appeals were taken from orders of that court which approved the conservatorship and which denied the applications of the companies to resume title and possession of property and the conduct of business (sec. 1012, Ins. Code). The orders were affirmed in the following cases: *Caminetti* v. *State Mutual Ins. Co.*, 52 Cal.App.2d 321 [126 P.2d 165]; *Caminetti* v. *Guaranty Union Life Ins. Co.*, 52 Cal.App.2d 330 [126 P.2d 159]; *Caminetti* v. *National Guaranty Life Co.*, 52 Cal.App. 2d 835 [126 P.2d 170]. In other cases the appeals were abandoned. Subsequently, in December, 1942, the Insurance Commissioner presented to the superior court for approval a proposed rehabilitation and reinsurance agreement. By that instrument Guaranty Union Life Insurance Company is required to reinsure and assume all liability of the other eleven companies under policies outstanding on the effective date of the agreement, which is to be "at six o'clock P. M. Pacific War Time of the day upon which a formal order of the Court approving this agreement shall be filed with the Clerk of the Court." On February 15, 1943, the court made an order approving the agreement and caused it to be duly filed.

Austin Sherman, a policyholder in Guaranty Union Life Insurance Company and National Guaranty Life Company, and Chas. R. Thompson, a policyholder in Benjamin Franklin and Physician's Life Insurance Company, interveners on behalf of themselves and all policyholders of the respective companies, appealed from the order. They applied to the superior court for, but were denied, a stay pending appeal. The trial court granted a ten day stay to enable them to make application to this court. An order to show cause was issued

with a temporary stay pending a hearing and determination of the application.

By its order the trial court decreed that adequate provision had been made in the agreement for all classes of policyholders, creditors, and other persons; that the plan fairly and equitably protected and adjusted the rights, obligations and liabilities of all concerned; that a fair and reasonable method had been provided for the removal of the causes which made it necessary to take over the business and property; that the plan was feasible, just and equitable, and that it was to the best interests of the policyholders and of all other persons concerned that the plan and agreement be approved. The Insurance Commissioner was authorized, without further order of court, fully to perform the terms of the agreement, and to do anything deemed necessary or desirable to effectuate the purposes thereof.

The petitioners have indulged in some discussion of the facts going to the merits in order to show that substantial questions are involved on the appeals. It is pointed out that the twelve companies, parties to the rehabilitation and reinsurance agreement, are divided into three general groups of four each. Equitable Insurance Company of California, Master Life Insurance Company, Southwestern Life Insurance Company and Sunset Mutual Life Insurance Company, are insolvent and could not properly continue in business. Alliance Mutual Life Insurance Company, Great States Life Insurance Company, Mount Moriah Life Insurance Company, and State Mutual Life Insurance Company are solvent, but due to their small size, inadequate rates of insurance, and other factors, have but little chance of successful operation. The third group consists of the four companies directly involved in the appeals and these proceedings. These companies, it appears, would have a fair chance for successful separate operation if certain inadequacies, and hazardous, extravagant and other practices amounting to proprietary control by the management were obviated. National Guaranty is the largest, with slightly over a million dollars in assets and $106,000 surplus. Guaranty Union Life Insurance Company, second largest is asserted to be in the best financial condition, with $573,000 in assets, and over $350,000 surplus. The petitioners state that the questions presented on appeal have never been decided and are of first impression in this state. It is their contention that where, as they here assert,

reasons for the conservatorship have been removed, and a company is in sound condition, the necessity for the remedy of rehabilitation pursuant to section 1043 of the Insurance Code has been obviated, and that the commissioner must, pursuant to section 1012 of that code, return the business and assets to the company. The important question here is whether the reviewing court will grant a writ of supersedeas to stay the force and effect of the order approving the rehabilitation and reinsurance agreement, and thus the performance of the agreement, pending appeal.

■ The order appealed from is self-executing in that it requires no process of the court to carry it into effect. The appeal does not stay the effectiveness of such a judgment. ■ The writ of supersedeas acts only upon proceedings to enforce the judgment in the court below—not on the judgment itself. (Sec. 949, Code Civ. Proc.; *Dulin* v. *Pacific W. & C. Co.*, 98 Cal. 304 [33 P. 123]; *In re Imperial Water Co. No. 3*, 199 Cal. 556 [250 P. 394].) In the Dulin case it was pointed out that the writ of supersedeas ''cannot be used to perform the functions of an injunction against the parties to the action, restraining them from any act in the assertion of their rights, other than to prevent them from using the process of the court below to enforce the judgment. . . .''

In the Imperial Water Company case it was said: ''It has been repeatedly held by this court that a *supersedeas* will issue only to restrain the court below or its officers from proceeding to enforce a judgment pending appeal and that such writ is limited to restraining any action under the authority of the court upon the judgment appealed from. In other words, a writ of supersedeas will not issue to restrain or prevent a party from acting or proceeding under a judgment from which an appeal has been duly taken where no process of or action by the court below is involved.''

■ The petitioners contend that the Insurance Commissioner is an officer of the court by virtue of his receivership of the assets of the insurance companies and that performance of the agreement approved by the court constitutes such further proceedings as may be stayed by an appropriate writ. But the Insurance Commissioner is not an officer appointed by the court to enforce its judgment. He does not derive his power from the court, but from the statute. He has been called a receiver of the assets of the corporation (*Anderson* v. *Great Republic Life Insurance Co.*, 41 Cal.App.2d 181,

188-189 [106 P.2d 75]), but he is such not by appointment of the court, but by virtue of legislative enactment. ██ His office is not to perform functions in aid of the court's jurisdiction to decide a controversy between litigants, but he acts as a statutory officer, subject however to judicial supervision to prevent an arbitrary exercise of power or neglect of duty. A somewhat similar contention was made with respect to directors acting as trustees pending distribution of corporate assets in the Imperial Water Company case, *supra*, where the appellant sought to stay the distribution of assets pending appeal from the order authorizing distribution. This court rejected the contention that such trustees were amenable to the writ of supersedeas, saying: "But they are not officers of the court. They are merely statutory liquidators," citing *Relfe* v. *Rundle*, 103 U.S. 222, 225 [26 L.Ed. 337]. The analogy is apparent.

██ The petitioners nevertheless urge that the court may exercise its constitutional power in these cases to issue the writ of supersedeas when it appears that a stay is necessary in aid of its appellate jurisdiction, and that some restraint upon the commissioner is required in order to preserve to the appellants the fruits of the appeal in the event of a reversal. It is assumed that the court has power to issue the writ in a proper case. However, in *Carpenter* v. *Pacific Mutual Life Insurance Co.*, 13 Cal.2d 306 [89 P.2d 637], this court called attention to the fact that sections 946 and 949 of the Code of Civil Procedure do not apply to special proceedings under the Insurance Code; that under the latter code supersedeas should not be automatic, but that the question whether the writ should issue rested in the sound discretion of the court.

The petitioners invoke that discretion in their favor, and argue that the entire matter should be held *in statu quo* until this court has passed upon the legality of the plan of rehabilitation; that the plan should not be put into effect until after final court approval; that otherwise a cloud will be placed on the title of the property and the validity of the conservatorship proceedings which it is asserted would cause untold confusion and uncertainty, and result in irreparable injury in case the order should be reversed. They also point out that the companies have been operating under the conservatorship for over two and one-half years. They contend that injury has not resulted from such operation and that the companies will not suffer by continuing in conservatorship until the final

sanction of the courts on any proposed plan; that in the event of affirmance of the order of approval, adjustments can be made which will balance the equities arising between the "effective date" of the agreement and the date of affirmance of the order.

On the other hand the commissioner urges that the proper test in determining the appellants' right to supersedeas is a consideration of the respective rights of the litigants, which contemplates the possibility of affirmance as well as reversal; that the reviewing court will not issue the writ to secure to the appellants the fruits of a successful appeal unless it can be done without depriving the respondent of a substantial right. (*Food & Grocery Bureau* v. *Garfield*, 18 Cal.2d 174, 177 [114 P.2d 579]; *Luckenbach* v. *Krempel*, 188 Cal. 175, 177 [204 P. 591]; *Hulbert* v. *California etc. Cement Co.*, 161 Cal. 239, 255-256 [118 P. 928, 38 L.R.A.N.S. 436].)

The commissioner calls attention to the fact that the reorganization involves the affixing of liens on the policies of certain of the companies to compensate for insolvencies and to equalize the financial burden under the reinsurance and assumption of liability features; that policyholders who have held insurance contracts with inadequate rates must make certain elections between reduced insurance and increased rates; that if the effective date be postponed the financial equations and inter-company adjustments will be disturbed; that aged policyholders who die in the meantime will obtain preferences; that policyholders not on the point of death who can obtain cash values will do so before further reduction becomes effective; that the liens on policies computed as of the date of the judgment would be lost to that extent; that increases in rates, where increases are required, or reductions in face values would be lost for the interim period; and that readjustments to any extent may well be considered to be a new agreement or plan which in turn would entail hearings and result in appeals. It is urged that insurance business is one of risks and chances; that insurance companies can survive only by the application of the law of averages; that since the selection of risks is against the company, speed is a necessary element in any rehabilitation and reorganization; that substantial extension of the effective date of the agreement may cause serious threat to the solvency of the entire enterprise, and in any event the financial loss would be great and would become increasingly greater with the continued extension of the effective date.

■ As noted, the appeals do not automatically stay enforcement of the order. But they do suspend the force of the order as a conclusive determination of the rights of the parties. (*Dulin* v. *Pacific W. & C. Co., supra,* at p. 308.) This is so, since finality is not accorded a judgment until affirmance in the event of an appeal.

■ The fact that the conservatorship has continued for a period of more than two and one-half years would not justify the conclusion that conservatorship can continue indefinitely without injury or hazard. It may well be that the intervening period was necessary for the development of the plan of reorganization, and that at this time the usefulness of the conservatorship, except to put the plan into operation, is exhausted. In the absence of a showing to the contrary it is to be assumed that the commissioner will perform his official duties in accordance with the rights of all concerned, and that, with due consideration for the suspended force of the order as a conclusive determination, he will not go forward with performance except to the extent necessary to preserve the equities which have been formalized by the agreement and the order.

It is therefore concluded that a case is not presented requiring the issuance of the writ of supersedeas to maintain the *status quo* or to protect appellate jurisdiction.

The application is denied, and the order to show cause is discharged.

Gibson, C. J., Curtis, J., Carter, J., and Traynor, J., concurred.

Schauer, J., did not participate herein.

EDMONDS, J., Dissenting.—I do not join in the opinion of my associates for two reasons.

If the decision is based upon the ground that the order appealed from is self-executing and not subject to supersedeas, that determination is directly contrary, I believe, to the holding of *Carpenter* v. *Pacific Mut. L. Ins. Co.,* 13 Cal.2d 306 [89 P.2d 637]. If, on the contrary, their conclusion is that, upon the facts shown, the petitioning policyholders are not entitled to the writ to maintain the *status quo* or to protect appellate jurisdiction, then I disagree and point to evidence which, to me, compels the exercise of the court's discretion in their behalf.

Ordinarily, a writ of supersedeas will be granted only where

the judgment or order may be enforced pending the appeal by process for that purpose. But in the recent litigation concerning the Pacific Mutual Life Insurance Co., it was expressly held, upon the authority of *Carpenter* v. *Pacific Mut. L. Ins. Co.*, 10 Cal.2d 307 [74 P.2d 761], that the procedural provisions of part II of the Code of Civil Procedure have no application to a proceeding under the Insurance Code. For that reason, the court declared, ''We must presume that the Legislature intended that upon appeal from orders or judgments made under the Insurance Code the supersedeas should not be automatic, but whether one should be granted should rest in the sound discretion of the court in the exercise of its power to grant supersedeas where no statutory stay exists.'' (*Carpenter* v. *Pacific Mut. L. Ins. Co.*, 13 Cal.2d 306, 312 [89 P.2d 637].)

Considering the application in the present proceeding upon the merits, the order for which supersedeas is now sought is substantially the same in form as the one made for rehabilitating the Pacific Mutual Life Insurance Company except that it authorizes the Insurance Commissioner to merge the assets of insolvent companies with those of solvent ones. Four of the twelve insurance companies are insolvent, four of them are solvent but cannot properly continue in business, and the others are solvent with a fair chance for successful separate operation. By the rehabilitation agreement, the second largest of the latter group, which is asserted to be in the best financial condition, is required to reinsure and assume all of the liability of the other eleven companies.

Do not these facts show, beyond the possibility of successful contradiction, that if the commissioner proceeds to merge the assets of the twelve corporations and administer them as the property of Guaranty Union Life Insurance Company, subject to the libilities of each one of them, the interests of the policyholders in the solvent companies may be seriously jeopardized in the event of a reversal upon determination of the appeal? And if the commissioner fixes ''liens on the policies of certain of the companies to compensate for insolvencies and to equalize the financial burden under the reinsurance and assumption of liability features'' or requires ''that policyholders who have held insurance with inadequate rates must make certain elections between reduced insurance and increased rates'' as he asserts must be done now, and the order is reversed, will it not be practically impossible to return the

companies to their present position? Moreover, if I read the opinion of my associates correctly, the commissioner intends to pay death claims and cash values upon the basis of the reinsurance agreement and also to make readjustment of rates effective immediately. How might such steps be retraced in the event of a reversal.

These facts, in my judgment, present compelling reasons why the discretion of the court should be exercised in favor of granting the writ of supersedeas to maintain the *status quo*. And certainly the writ should not be denied upon the assumption that the commissioner "will not go forward with performance except to the extent necessary to preserve the equities which have been formalized by the agreement and the order." Under that qualification of the decision, how will the commissioner, or any of the insurance companies, know to what extent he may go in carrying out the agreement and order pending a determination of the appeal?